Filed 7/22/26  Tran v. DW2R CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JASMINE TRAN,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>DW2R, INC.,<br><br>     Defendant and Appellant. | G065271<br><br>(Super. Ct. No. 30-2021-01220737)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Craig L. Griffin, Judge. Affirmed. Motion to Disregard. Denied.

Lakhman & Kasamatsu and Ann L. Lakhman for Defendant and Appellant.

J. Gill Law Group and Jasmin K. Gill; Love Law and Calvin F. Love for Plaintiff and Respondent.

The jury in the underlying employment case awarded plaintiff Jasmine Tran more than $10.7 million in damages, unpaid wages, punitive damages, and statutory penalties against defendant James Hooper, her former supervisor at the medical spa "Don't Wait 2 Rejuvenate" (the Spa), and against multiple corporate entities owned by Hooper. One of those corporate entities is appellant DW2R, Inc., an entity co-owned by Hooper and a dermatologist named Dr. Anh-Dao Le (Dr. Le).[1] Following entry of judgment, the trial court denied DW2R, Inc.'s motion for a new trial, but granted in part its motion for judgment notwithstanding the verdict (JNOV). In so doing, the court vacated the punitive damages award against DW2R, Inc., finding no evidence was presented at trial regarding its financial condition. The court upheld the remainder of the judgment against DW2R, Inc.

DW2R, Inc. contends substantial evidence does not support the jury's findings against it. Specifically, DW2R, Inc. contends the judgment is based entirely on an agency theory not supported by the evidence and is the result of improper argument by plaintiff's counsel. We affirm.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff worked at the Spa from the date it first opened in Newport Beach in November 2018 until June 2021, when she was fired for refusing to sign a "Non-Disclosure, Non-Circumvention, Non-Employment, Non-Sue, and Non-Competition Agreement" (NDA). The proposed NDA purported to be between plaintiff, who was referred to as the "[c]onfidant"

---

[1] The Spa, which had one location in Newport Beach, operated under multiple names, including Don't Wait 2 Rejuvenate, DW2R, LLC, DW2R, Inc., Skin Cell Rejuvenation, Facelift Med Spa, Growing Skincare, Innergy Development, and Butterfly Facelift.

and "independent contractor," and Hooper, both individually and on behalf of his affiliated companies and approved agents and official representatives. It required plaintiff to agree: (1) she is an independent contractor with no right to receive any benefits or health insurance; (2) she was informed Hooper has Tourette's syndrome and "will speak out unexpectedly, sometimes in an inappropriate way with sexual harassment words";[2] (3) she will not be able to sue Hooper in court; (4) any sexual harassment conversations "will not stand in a court of law"; (5) plaintiff "accepts working in this environment and accepts the 'sexual harassment' conversations with maturity and [will] not be offended by [Hooper's] opinion and/or suggestions to improve her personal image"; and (6) she is fully releasing all claims against Hooper "and/or Don't [Wait] 2 Rejuvenate, the company, or any of the company employees."

Plaintiff filed her complaint on September 13, 2021, alleging 16 causes of action against Hooper, DW2R, Inc., DW2R, LLC, and Don't Wait 2 Rejuvenate, LLC. Plaintiff alleged that during her employment at the Spa, she was sexually harassed on numerous occasions by Hooper and that, after she complained about Hooper's conduct, defendants demanded she sign the NDA and then terminated her employment when she refused to do so.

Of the 16 causes of action in the complaint, seven were alleged under California's Fair Employment and Housing Act (FEHA). They included the first, second, third, fourth, fifth, seventh, and eighth causes of action, for (1) sexual harassment—hostile work environment (Govt. Code, § 12940, subd. (j)), (2) sexual harassment—quid pro quo (*ibid.*), (3) failure to take reasonable

---

[2] Plaintiff testified at trial Hooper does not have Tourette's Syndrome, Hooper repeatedly sexually harassed her during her employment, and before being asked to sign the NDA, she had told Hooper his conduct was inappropriate and must stop.

steps to prevent sexual harassment (*id.*, § 12940, subd. (k)), (4) sex discrimination (*id.*, § 12900, et seq.), (5) retaliation (*id.*, § 12940, subd. (h)), (6) requiring plaintiff to sign an NDA and harassment agreement as a condition of employment (*id.*, § 12964.5), and (7) wrongful termination (*id.*, § 12900, et seq.). Plaintiff also alleged causes of action for retaliation under Labor Code section 1102.5 (sixth cause of action), wrongful termination in violation of public policy (ninth cause of action), and violation of Business and Professions Code section 17200 et seq. (sixteenth cause of action).

The complaint also included six wage and hour claims, including the tenth cause of action for failure to pay overtime wages pursuant to Labor Code sections 510, 1194, 1197 and applicable Industrial Wage Commission orders; the eleventh cause of action for failure to pay minimum wages pursuant to Labor Code sections 1194, 1194.2, 1197 and applicable wage orders; the twelfth cause of action for failure to provide meal periods pursuant to Labor Code sections 512, 226, 226.7, and applicable wage orders; the thirteenth cause of action for failure to provide rest periods pursuant to Labor Code sections 226.7 and applicable wage orders; the fourteenth cause of action for wage statement violations pursuant to Labor Code section 226, subdivisions (a) and (e); and the fifteenth cause of action for failure to provide wages due upon termination pursuant to Labor Code sections 201 and 202.[3]

The case was tried over multiple days in October 2024. The jury returned a verdict against DW2R, Inc. on all causes of action except the minimum wage claim and awarded plaintiff damages in the total amount of

_____

[3] Multiple other defendants were added to the action prior to trial, including Qin Moody, Innergy Development d/b/a Don't Wait 2 Rejuvenate (Innergy), Facelift Medspa, LLC (Facelift), Butterfly Medspa, LLC (Butterfly), SkinCellRejuvenation, LLC (SkinCell), and Growing Skincare, LLC (Growing Skincare).

4

$10,768,381, which included $10 million in punitive damages.[4] The trial court entered judgment based on the verdict on November 27, 2024.

DW2R, Inc. filed its JNOV motion on November 18, 2024, and its notice of intention to move for a new trial and motion for new trial on November 19, 2024.[5] Plaintiff opposed both motions.

After hearing the matter and taking it under submission, the court granted the JNOV motion "in full" (capitalization and boldface omitted) as to the punitive damages award and denied it regarding "the liability of DW2R, Inc." on the ground that, "as set forth in Plaintiff's opposition, substantial evidence supported the jury's findings against DW2R, Inc." The court denied the motion for new trial on the ground "the weight of the

---

[4] In addition to the punitive damages, the jury awarded plaintiff the following: (1) $166,220 in economic damages for past and future lost wages and earnings; (2) $500,000 in non-economic damages for past and future loss of enjoyment of life, mental suffering, anxiety, humiliation, grief, inconvenience, and emotional distress; (3) $7,680 for unpaid overtime, (4) $10,640 premium wages for missed meal breaks; (5) $10,640 premium wages for missed rest breaks; (6) $1,650 in penalties for wage statement violations; and (7) $4,800 in waiting time penalties for unpaid wages.

[5] DW2R, Inc. moved for a new trial, asserting (1) irregularity in the proceedings based on allegations of improper argument by plaintiff's counsel (Code Civ. Proc., § 657(1)); (2) the punitive damages award was excessive (*id.*, § 657(5)); and (3) the evidence was insufficient to justify the verdict, or the verdict is against the law (*id.*, § 657(6)).

evidence supports the jury's findings against DW2R, Inc." DW2R, Inc. timely appealed.[6]

## DISCUSSION

### I.

#### STANDARD OF REVIEW

"On appeal from an order denying a JNOV motion, 'the standard of review is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion. [Citations.]' [Citation.] Accordingly, we may reverse an order denying a JNOV motion 'only if, reviewing all the evidence in the light most favorable to [plaintiff], resolving all conflicts, and drawing all inferences in her favor, and deferring to the implicit credibility determinations of the trier of fact, there was no substantial evidence to support the jury's verdict in her favor.'" (*Hurley v. Department of Parks & Recreation* (2018) 20 Cal.App.5th 634, 644.)

In ruling on a motion for new trial, a trial judge is accorded wide discretion, and "the exercise of this discretion is given great deference on appeal." (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871–872.) The denial of a new trial motion based on insufficiency of the evidence will only be reversed "if there is no substantial conflict in the evidence and the evidence compels the conclusion that the motion should have been granted." (*Howell v. State Dept. of State Hospitals* (2024) 107 Cal.App.5th 143, 149.) Where a trial court denies a new trial motion that was sought on grounds of attorney misconduct and the appellate court concludes misconduct was shown, the appellate court reviews "the entire record, including the evidence . . . to make

---

[6] Moody filed a separate appeal from the judgment in case No. G065203.

6

an independent determination as to whether the error was prejudicial." (*City of Los Angeles v. Decker, supra,* 18 Cal.3d at p. 872.)

## II.

### SUBSTANTIAL EVIDENCE SUPPORTS THE JUDGMENT AGAINST DW2R, INC.

DW2R, Inc. contends the jury's verdict is not supported by substantial evidence and that, in denying its motions for JNOV and new trial, the trial court erroneously relied on plaintiff's opposition papers because they contained an erroneous statement of facts and misinterpretations of the law. We find no merit to its arguments.

DW2R, Inc. describes the evidence it contends supports *its* position that it was not plaintiff's employer or an agent of Hooper—including Hooper's and/or Moody's testimony that DW2R, Inc. did not conduct business at the Spa, run advertisements, have a bank account, or employ plaintiff. DW2R, Inc. further argues that evidence showed it was neither plaintiff's employer nor an agent of plaintiff's employer and that plaintiff's testimony was impeached by other witnesses and her own evidence. But contrary evidence was introduced at trial regarding the company's purpose and involvement in the Spa, as explained below.[7] In reviewing a jury's factual determinations for substantial evidence, we do not resolve evidentiary conflicts. (See *In re Caden C.* (2021) 11 Cal.5th 614, 640 [factual determinations should be upheld even though substantial evidence exists to the contrary].) The jury was entitled to accept the truthfulness of plaintiff's

---

[7] Dr. Le was not a party to the action and did not testify at trial.

7

testimony and reject contrary testimony as lacking credibility. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

We conclude the trial court properly ruled substantial evidence supports the verdict against DW2R, Inc. First, there was substantial evidence of a joint venture between DW2R, Inc. and Hooper and his other entities with respect to the operation of the Spa. At trial, the court instructed the jury with CACI No. 3712, which stated: "Each of the members of a joint venture, and the joint venture itself, are responsible for the wrongful conduct of a member acting in furtherance of the venture. [¶] You must decide whether a joint venture was created in this case. A joint venture exists if all of the following have been proved: [¶] 1. Two or more persons or business entities combine their property, skill, or knowledge with the intent to carry out a single business undertaking; [¶] 2. Each has an ownership interest in the business; [¶] 3. They have joint control over the business, even if they agree to delegate control; and [¶] 4. They agree to share the profits and loss of the business. [¶] A joint venture can be formed by a written or an oral agreement or an agreement implied by the parties' conduct."[8]

Evidence showed Hooper and Dr. Le were the co-owners of DW2R, Inc., and the corporation was incorporated in 2019 listing the Spa's address as its address. As with his other entities, Hooper was DW2R, Inc.'s incorporator and was at the helm of its operations. DW2R, Inc. was listed as the tenant on the initial commercial lease for the Spa's premises. Hooper signed the lease as DW2R, Inc.'s "CEO." There was evidence Dr. Le, the co-owner of DW2R Inc., administered botox injections and performed other

---

[8] DW2R, Inc. does not contend there was any instructional error at trial.

8

procedures at the Spa, that plaintiff performed work for DW2R, Inc., and that without Dr. Le's involvement, certain medical services could not be performed and medical devices could not be purchased for and used at the Spa.

There also was substantial evidence DW2R, Inc. was an employer of plaintiff. It was just one of multiple related entities created by Hooper that he used interchangeably to conduct the operations of the Spa.[9] Plaintiff testified the Spa was marketed under several names, including "Don't Wait 2 Rejuvenate," "DW2R," "SkinCell Rejuvenation," "Facelift Medspa," and "Butterfly Medspa." Hooper acknowledged "DW2R" was shorthand for "Don't Wait 2 Rejuvenate" and that he had created several companies using that trade name to promote the same medical spa services at the same location. As plaintiff aptly described the situation in her appellate briefing: "Hooper blurred the distinction between entities, used them collectively to operate the same medical spa, and . . . Plaintiff's work was performed for DW2R, Inc. as part of that unified business operation."

DW2R, Inc. contends it cannot be liable to plaintiff because Hooper's acts were unauthorized or because the corporation conducted no business. As discussed above, the record shows otherwise. And because Hooper's harassment occurred while he was acting in his supervisory capacity on behalf of DW2R, Inc., DW2R, Inc. is liable for his conduct. (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 707 ["When the harasser is a supervisor, the employer is strictly liable for the supervisor's actions"].)

---

[9]Government Code section 12926, subdivision (d), states: "'Employer' includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly . . . ." There was evidence admitted at trial showing Hooper had five or more employees working at the Spa while plaintiff worked there.

## III.

### DW2R, Inc.'s Claim of Attorney Misconduct

DW2R, Inc. argues counsel for plaintiff committed multiple acts of misconduct during closing argument, including misrepresenting the facts and evidence, attempting to impeach Hooper for using a wheelchair during his deposition, arguing facts not in evidence, "personalizing" the case, and trying to inflame the jury against defendants. We find no grounds for reversal.

DW2R, Inc. does not contend opposing counsel's closing argument violated any orders issued by the court, and it has failed to show it objected at trial to any of the alleged misconduct. "'Generally, a claim of misconduct is entitled to no consideration on appeal unless the record shows a timely and proper objection and a request that the jury be admonished.'" (*Janice H. v. 696 North Robertson, LLC* (2016) 1 Cal.App.5th 586, 604.) "'In the absence of a timely objection the offended party is deemed to have waived the claim of error through participation in the atmosphere which produced the claim of prejudice.'" (*Ibid.*) DW2R, Inc.'s claims of attorney misconduct have been waived.

Even assuming for the sake of argument counsel's statements during closing argument constituted misconduct and DW2R, Inc. did not waive its right to challenge them on appeal, DW2R, Inc. has failed to demonstrate prejudicial error by showing it is "'reasonably probable that the jury would have arrived at a different verdict in the absence of the argument

10

by [plaintiff's counsel].'" (*City of Los Angeles v. Decker, supra,* 18 Cal.3d at p. 872.)

IV.

MOTION TO DISREGARD PORTIONS OF PLAINTIFF'S BRIEF

DW2R, Inc. filed a motion asking us to disregard portions of plaintiff's appellate brief on the grounds it misstates the record, contains assertions not supported by any citations, attributes to DW2R, Inc. admissions it never made, "manufacture[s] liability through narrative," and advances factual assertions unsupported by the record in violation of California Rules of Court, rule 8.204(a)(1)(C).[10] The motion is denied. DW2R, Inc. filed a reply brief, in which it had a full opportunity to correct any purported misstatements of the record. As to any violations of rule 8.204(a)(1)(C), we decline to consider any arguments and factual assertions not supported by specific citation to the appellate record whether they appear in appellant's or respondent's briefing. (See *Baer v. Tedder* (2025) 115 Cal.App.5th 1139, 1166.)

---

[10] That rule requires every reference to a matter in the appellate record be supported with a citation to the volume and page number of the record where the matter appears.

## DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal.


GOODING, J.

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.